IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LLOYD JAMES BRIGMAN,** | : | CIVIL ACTION NO. 1:20-CV-1549 |
| **Plaintiff** | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **ADAM SCHAUM,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

*Pro se* plaintiff Lloyd James Brigman commenced this civil rights action against several defendants in August 2020. Presently before the court are a motion to dismiss filed by defendant Adam Schaum, the report of Magistrate Judge William I. Arbuckle recommending that we grant in part and deny in part Schaum's motion, and Schaum's limited objection thereto.

**I.    Factual Background and Procedural History**

Brigman's complaint alleges constitutional and other violations by a number of defendants arising from Brigman's arrest on October 7, 2019, and two subsequent summary traffic convictions. We reproduce those aspects of Brigman's pleading relevant to defendant Schaum below:

> On October 7th in the year of our lord 2019 at 10:43 pm while stopped for fuel at the Rutters #57 located in the United States of America, Commonwealth of Pennsylvania, County of York, Springettsbury Township, 1450 Mount Zion road, I was approached by a man, Adam Schaum in the capacity of a law enforcement office badge # 2615, officer identification# 39028 from the Commonwealth of Pennsylvania, Hellam Township police department, under his oath of office. Adam Schaum approached me in a hostile manor [sic] yelling

with his hand on his weapon. Adam Schaum was in dishonor. After asking Adam Schaum to identify himself many times, he finally identified himself as Officer Schaum. Seconds after he identified himself I was assaulted on video by Adam Schaum and three other, to this day, unidentified men in the capacity of law enforcement officers, from the Commonwealth of Pennsylvania, Springettsbury township, under their oath of office. During the assault Adam Schaum and gang bound me in chains and looted my belongings.

. . .

At this time I informed Adam Schaum that anything I do from this time forward, I do under duress. I specifically informed Adam Schaum that I do not give you permission to do anything to me and to release me. Adam Schaum did not release me. Adam Schaum and his gang then demanded me to identify myself, because they could not find a picture identification in my looted belongings. I told them if they would release me I would show them where to procure some form of identification. Adam Schaum and his gang still did not release me. Under duress, I told Adam Schaum and his gang the where about of some identification. I directed Adam Schaum and his gang to the glove compartment of my conveyance. There Adam Schaum and his gang were served with Notarized Affidavit of reservation of rights UCC 1-308/1-207 ( see exhibit A) and a certified copy of my certification of Birth from the Commonwealth of Pennsylvania, Department of Health. ( see exhibit B ) At this time I informed Adam Schaum and his gang that I was a citizen of the Republic of the Commonwealth of Pennsylvania. I was and am, always in my individual capacity. At this time one of Adam Schaum's gang members labeled me as a sovereign citizen. ( on April 13th in the year of our lord 2010 the Federal Bureau of Investigation labeled, sovereign citizens as " Domestic terrorist and anti-government extremist" )

. . .

After serving Adam Schaum and his gang with the Notarized Affidavit of reservation of rights UCC 1-308/1-207,( see exhibit A) Adam Schaum nor his gang did not

2

> abate or question the contract, they remained silent, therefore they gave their implied consent, and a contract was formed.
>
> Adam Schaum and his gang then forced me into their conveyance and I was taken to the jail, located in the Commonwealth of Pennsylvania, County of York, City of York, 45 north George street, at the York county court house. On arrival Adam Schaum told the no less than five Sheriffs who were at the scene that I was a sovereign citizen. This is collusion and fraud.
>
> . . .
>
> I did not speak another word to any officials, until my release at aproxmently 10:30am on October 8th in the year of our lord 2019. Adam Schaum and his gang, employed by the Hellam township police Department and possibly other county and State departments, whom are not laymen, are under contract for the 11 hour and 30 minutes I was unlawfully detained. . . .
>
> . . .
>
> Officer Adam Schaum and his gang who claimed to be officers of the law and have an oath of office, and are not laymen, willingly and knowingly with intent, "immediate breach" (Black's Law Dictionary, ninth edition.) oath of office and are guilty of no less than five acts of treason. In addition to those acts of treason, Adam Schaum is guilty of issuing two citations under the UCC and common law where there is no corpus delicti and no proof of commerce. . . . Citation 1 ( see exhibit C) title 75 section 3327 subsection A 1 and ( see exhibit Dj ) citation 2 title 75 section 1543 subsection A. . . .

(Doc. 1 at 3-5).

Brigman goes on to summarize the legal proceedings that followed his arrest. (See id. at 5-6). Brigman alleges that he received a letter from a Pennsylvania state constable on October 29, 2019, informing him that a warrant had been issued for his arrest, and that he responded with a cease-and-desist letter. (See id. at 5). He

3

alleges that he received notice from Magisterial District Judge Robert A. Eckenrode "of a court date of December 11, 2019," and that he was found guilty of the summary traffic offenses during that proceeding. (See id. at 5-6). Brigman further alleges that he filed a summary appeal of the judgment and that, during a summary appeal trial on July 30, 2020, Judge Amber A. Kraft of the Court of Common Pleas of York County "entered in to record that I put in a guilty plea for both charges, which is not true, and will not be reflected on the court transcripts." (See id. at 6).

Brigman attaches to his complaint a partial copy of the summary appeal docket sheet. (See Doc. 1-2 at 22). The attached docket sheet reflects that Brigman entered a guilty plea on July 30, 2020, to two offenses: "Duty of Driver in Emergency Response Areas – Pass in Lane Not Adjacent to Area" in violation of 75 PA. CONS. STAT. § 3327, and "Driv While Oper Priv Susp Or Revoked" in violation of 75 PA. CONS. STAT. § 1543. (See id.) The court has accessed and reviewed the full docket sheet on the Unified Judicial System of Pennsylvania Web Portal.[1] See *Case Search*, UNIFIED JUDICIAL SYS. OF PA. WEB PORTAL, https://ujsportal.pacourts.us/CaseSearch (last visited Aug. 25, 2021). Our review of the public docket sheet reflects that the partial docket supplied by Brigman is accurate and that his convictions, to date, have not been reversed, expunged, invalidated, or otherwise called into question. See Commonwealth v. Brigman, No. CP-67-SA-0000020-2020 (Ct. Com. Pl. York Cnty.).

---

[1] The docket sheet is a public record which the court may take judicial notice of and consider at the Rule 12(b)(6) stage. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp., 998 F.2d 1192, 1196 (3d Cir. 1993)).

4

Brigman filed the instant complaint on August 28, 2020, naming a number of defendants. On February 22, 2021, defendant Schaum filed a motion to dismiss. Judge Arbuckle has issued a report recommending that we grant in part and deny in part Schaum's motion, and Schaum has lodged a limited objection to the extent the report recommends denial, in part, of his motion to dismiss.

## II.     Legal Standards

### A.     Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court undertakes *de novo* review of the contested portions of the report. See E.E.O.C. v. City of Long Branch, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); see also FED. R. CIV. P. 72(b)(3). We afford "reasoned consideration" to any uncontested portions of the report before adopting them as the decision of the court. City of Long Branch, 866 F.3d at 100 (quoting Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)).

### B.     Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts

5

contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.    Discussion**

Judge Arbuckle construes Brigman's complaint as asserting claims against Schaum for false arrest and false imprisonment under the Fourth Amendment to the United States Constitution; an equal protection violation under the Fourteenth Amendment to the United States Constitution, as well as violations of 18 U.S.C. §§ 241 and 242; and a claim for breach of contract under Pennsylvania law. (See Doc. 41 at 13). Brigman has not disputed this construction, and we find it to be a reasonable and appropriate interpretation of Brigman's complaint.

In his report, Judge Arbuckle recommends that we dismiss Brigman's equal-protection and breach-of-contract claims for failure to state a claim for which relief may be granted. Brigman has not objected to this recommendation. Having afforded "reasoned consideration" to this portion of the report, see City of Long Branch, 866 F.3d at 100 (quoting Henderson, 812 F.2d at 879), we perceive no error in Judge Arbuckle's analysis. Accordingly, we will adopt Judge Arbuckle's report to this extent and dismiss Brigman's equal-protection and breach-of-contract claims. And because the deficiencies in these claims are legal rather than factual in nature and thus incurable, we conclude that leave to amend would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Judge Arbuckle also recommends that we permit Brigman's false arrest and false imprisonment claims to proceed. Schaum objects to this aspect of the report alone. We agree with Judge Arbuckle that both claims should proceed and write separately to respond to Schaum's objections.

Schaum primarily relies on the favorable-termination rule articulated in Heck v. Humphrey, 512 U.S. 477 (1994), in seeking dismissal of Brigman's false arrest and false imprisonment claims. Heck bars any Section 1983 claim that necessarily implies the invalidity of an underlying conviction or sentence unless that underlying conviction or sentence has been reversed on appeal, expunged by an executive order, invalidated by a state court, or impugned by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. Claims for false arrest or false imprisonment are not automatically subject to the favorable-termination rule. Our court of appeals has explained that "[b]ecause a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, . . . claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which *necessarily* implicate the validity of a conviction or sentence." Montgomery v. De Simone, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (emphasis added). Thus, as Judge Arbuckle notes, there are circumstances in which it "is at least conceivable that arresting officers could lack probable cause to arrest and detain even if the evidence later supports conviction beyond reasonable doubt." (Doc. 41 at 18 (quoting Burke v. Township of Cheltenham, 742 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (internal quotation marks omitted)).

We agree with Judge Arbuckle that, based on the facts currently available, this is at least *plausibly* one such circumstance. The only facts before the court at this time are that Brigman was arrested on October 7, 2019, while pumping gas at a Rutters gas station; that he was "assaulted" and "bound . . . in chains" by Schaum and other officers, purportedly for no reason; that he was taken into custody and

8

released the next day; and that he was subsequently convicted for two summary traffic offenses.  (See Doc. 1 at 3-4; Doc. 1-2 at 22).  We have no other information about the circumstances leading to Brigman's arrest or the relationship between those circumstances, his arrest, and his later convictions.  To agree with Schaum regarding the application of Heck (and the existence of probable cause to arrest) would require the court to assume facts not in the record and draw impermissible inferences in Schaum's favor.[2]  We will thus adopt Judge Arbuckle's report and

---

[2] For example, Schaum asks the court to infer that, because 75 PA. CONS. STAT. § 3327 "relates to approaching or passing an emergency response area *while operating a vehicle*," Brigman's guilty plea to that offense establishes he violated the statute "during the time period wherein he was driving his vehicle, which necessarily occurred *before* Brigman stopped at Rutters #57 and was subsequently arrested," and thus "demonstrates that he violated [the statute] *before* he stopped at Rutters, *before* Officer Schaum approached, and *before* Officer Schaum arrested him," meaning "Officer Schaum observed Brigman commit the traffic offense *prior to* Brigman stopping at Rutters #57."  (See Doc. 43 at 5-6). Similarly, Schaum asserts that "[a]t the point Officer Schaum located Brigman's birth certificate, he confirmed Brigman's identity and was able to verify that he was operative [sic] a vehicle with a suspended or revoked license," supplying probable cause to arrest Brigman for violation of 75 PA. CONS. STAT. § 1543.  (See id. at 8). If these facts are true, and Schaum's summary traffic violations provided a lawful basis for his arrest, his guilty plea to both offenses may foreclose his Section 1983 false arrest and false imprisonment claims.  At this stage, however, those facts are not properly before the court.  Moreover, we note the cases cited by Schaum to support his view that Brigman's convictions automatically erect a Heck bar are distinguishable: in both cases, given the nature and circumstances of the extant convictions, success on the Section 1983 false arrest claim would necessarily have implied the invalidity of the conviction.  See Ross v. Donkocik, 60 F. App'x 409, 410 n.1 (3d Cir. 2003) (nonprecedential) (conviction for obstruction of administration of law or governmental function arising from plaintiff resisting arrest); Randolph-Ali v. Steelton Police Dep't, No. 1:16-CV-1625, 2016 WL 11270010, at *8 (M.D. Pa. Nov. 3, 2016) (conviction for disorderly conducting arising from plaintiff resisting arrest), report and recommendation adopted, 2017 WL 192157, at *1 (M.D. Pa. Jan. 18, 2017) (Conner, C.J.); cf. Heck, 512 U.S. at 486 n.6 (explaining Section 1983 claim for false arrest would imply invalidity of outstanding conviction for resisting arrest, since that offense has "lawful arrest" as an element).

deny Schaum's motion to dismiss, without prejudice to Schaum's right to reassert his arguments on a more developed record.

**IV.     Conclusion**

The court will overrule Schaum's objection and adopt Judge Arbuckle's report as set forth herein.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        August 26, 2021